UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>TASJAWN WHITE,</td><td></td></tr>
<tr><td style="text-align:center">Plaintiff,</td><td>No. 19-CV-3604 (KMK)</td></tr>
<tr><td>v.</td><td>OPINION & ORDER</td></tr>
<tr><td>WESTCHESTER COUNTY, <em>et al.</em>,</td><td></td></tr>
<tr><td style="text-align:center">Defendants.</td><td></td></tr>
</table>

<u>Appearances</u>

Tasjawn White
Valhalla, NY
*Pro se Plaintiff*

Joseph DeDonato, Esq.
Bennett Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendants*

Loren Zeitler, Esq.
Westchester County Department of Law
White Plains, NY
*Counsel for Defendants Westchester County and Commissioner Joseph K. Spano*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Tasjawn White ("Plaintiff"), currently incarcerated at the Westchester

County Jail ("WCJ"), brings this Action, under 42 U.S.C. § 1983, against Westchester County

("Westchester" or the "County"); Aramark Correctional Services, LLC ("Aramark"); Manuel

Mendoza ("Mendoza"), Aramark Food Services Director; and Joseph K. Spano ("Spano"),

Commissioner of the Westchester County Department of Corrections ("WCDOC"; collectively,

"Defendants")  alleging violations of his constitutional rights under the Eighth Amendment due

to the condition and preparation of his food.  (Compl. (Dkt. No. 2).)  Before this Court is

Defendants' Motion To Dismiss (the "Motion").  (*See* Not. of Mot. (Dkt. No. 23).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), and are taken as true for the purpose of resolving the instant Motion.

Plaintiff arrived at WCJ as a detainee on March 29, 2018.  (*Id*. at 6–7.)[1]  The meat Plaintiff receives as part of his no-bean diet is "always undercooked as the meat is completely raw internally," as if the food "came directly out of the freezer."  (*Id*. at 7.)  Plaintiff has received undercooked and internally raw meat "over 100 times."  (*Id*.)  When Plaintiff complains, he is told to cook the meat further using the microwave, but, because Plaintiff is on keep-lock, he cannot use the microwave.  (*Id*.)  Plaintiff's meals "always arrive cold" and "taste soapy," "as if the soap is not properly rinsed off of [the food trays]," and "dozens of other inmates have also complained of this."  (*Id*.)  In addition, the juice container "is covered in mold," and the water in Plaintiff's cell is "brown," leaving Plaintiff "dehydrated all day long."  (*Id*.)  These conditions, including the undercooked food, cause Plaintiff to suffer "stomach pain, diarrhea, nausea, [and] headaches," and to be "always sick [and] vomiting" and "weak."  (*Id*. at 7–8.)  Plaintiff was twice obstructed from submitting grievances: first by Sergeant McWilliams ("McWilliams"), not a party to this Action, who, notwithstanding that this was Plaintiff's first complaint, said "we're tired of these bullshit food grievances" and "threw [the written grievance] in the garbage right in front of [Plaintiff's] face," and a second time by Sergeant West ("West"), also not a party to this

---

[1] As Plaintiff's filings do not have consistent pagination, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

Action, who told Plaintiff he was "wasting [his] time" and "refused to take [Plaintiff's] grievance." (*Id.* (quotation marks omitted).)

Plaintiff alleges that Defendants are aware of the food service conditions yet have failed to remedy them; that the County has failed to oversee Aramark and its employees; that Mendoza and Spano have failed to act even though they "have had meetings regarding the foods being served at [WCJ] and they specifically discussed similar complaints"; that Westchester and Aramark have failed to train, supervise, and discipline their employees; and that the supervisory defendants have failed to intervene and take corrective action. (*Id.* at 8.)

B. Procedural History

Plaintiff, Kelechi Ogidi ("Ogidi"), and David Smith ("Smith") filed the operative Complaint on February 20, 2019. (Compl. (Dkt. No. 7, 19-CV-1614 Dkt.).) On the same date, Plaintiff filed a request to proceed in forma pauperis ("IFP"). (Dkt. No. 3, 19-CV-1614 Dkt.) On April 16, 2019, Chief Judge McMahon severed the claims of Plaintiff, Ogidi, and Smith, (Dkt. No. 12, 19-CV-1614 Dkt.), and, on the same date, Plaintiff's Complaint and request to proceed IFP were assigned to this Court, (Compl.; Dkt. No. 1). Chief Judge McMahon granted Plaintiff's IFP request on April 25, 2019. (Dkt. No. 5.) On July 22, 2019, Aramark and Mendoza filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss or, in the alternative, leave to file the same. (Dkt. No. 14.) The Court granted leave to file a motion to dismiss and set a briefing schedule on July 31, 2019. (Dkt. No. 16.) On August 2, 2019, the County and Spano also filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss. (Dkt. No. 19.) The Court set a briefing schedule on August 15, 2019. (Dkt. No. 21.) On September 5, 2019, Defendants filed the instant Motion, seeking to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of

Mot.; Mem. of Law Submitted by Defs. ("Defs.' Mem.") (Dkt. No. 24).)  On October 23, 2019,

the Court deemed the Motion fully submitted and unopposed.  (Dkt. No. 26.)  Plaintiff has not

filed a response.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

4

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

### B.  Analysis

Defendants argue, among other things, that Plaintiff's claims against the County and Aramark and against Mendoza and Spano in their official capacities fail because Plaintiff has not established *Monell* liability, and that Plaintiff's claims against Mendoza and Spano in their individual capacities fail because Plaintiff has not alleged their personal involvement.  (Defs.' Mem 6–11.)[2]

#### 1.  *Monell* Claims

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes*, 723 F.3d at 405–06 (citation omitted).  "Congress did not intend municipalities to be held liable [under

---

[2] Defendants assume that Aramark is a state actor for purposes of this Motion only, so that the principles articulated in *Monell*, which addresses municipal liability, may be applied to Aramark.  (Defs.' Mem. 7.)  The Court notes that in any event, "[i]n determining whether or not a private employer may be held liable in a § 1983 claim, courts are guided by the principles articulated in *Monell* . . . and its progeny."  *Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *10 (S.D.N.Y. Dec. 16, 2015) (citation omitted); *see also Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses." (citations omitted)); *Gitter v. Target Corp.*, No. 14-CV-4460, 2015 WL 5710454, at *3 n.4 (S.D.N.Y. Sept. 29, 2015) ("The Second Circuit has extended *Monell*'s rationale to private businesses." (citation omitted)).  The Court may therefore apply the *Monell* analysis to Aramark.

§ 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

Plaintiff's allegations fall into the fourth category discussed in *Brandon*.  He alleges that the County and Aramark have failed to supervise and discipline their employees; that the County has failed to oversee Aramark and its employees; and that Defendants, including those in a supervisory role, have failed to take corrective action despite complaints from dozens of inmates and despite Mendoza's and Spano's participation in meetings discussing similar complaints. (Compl. 7–8.)

Plaintiff's Complaint does not contain sufficient factual matter to state a claim for a failure to adequately train that amounts to deliberate indifference.  To set forth a failure to train claim, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015).  In particular, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390 (footnote omitted).  Here, Plaintiff's allegation that the County and Aramark have failed to train their employees is a "boilerplate assertion[ ]" and is insufficient to state a *Monell* claim.  *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (quotation marks omitted) (dismissing failure to train claim where the complaint "succinctly state[d] one of the core legal concepts animating *Monell* liability[,] [b]ut . . . [did] absolutely nothing else" (citation and quotation

marks omitted)); *see also Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at

*5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where a plaintiff alleged failure to train

and supervise kitchen workers who, inter alia, did not wear hair nets because the complaint was

"devoid of any detailed factual allegations" that WCDOC lacked "a relevant training or

supervisory program" or that WCDOC "was otherwise deliberately indifferent to food

preparation problems"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539–40 (S.D.N.Y.

2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train

its employees, without providing any supporting factual detail about alleged deficiencies in the

training program").  For example, Plaintiff merely alleges that Westchester and Aramark "fail[]

to train, supervise, and discipline [their] employees," (Compl. 8), which falls short of the type of

claim that is plausible enough to survive this Motion.

       Plaintiff's Complaint also does not contain sufficient factual matter to state a claim for a

failure to adequately supervise or discipline that amounts to deliberate indifference.  A plaintiff

may establish deliberate indifference for a failure to supervise or discipline claim by showing

"that the need for more or better supervision to protect against constitutional violations was

obvious," from the fact that there "were repeated complaints of civil rights violations," and that

"the complaints [were] followed by no meaningful attempt on the part of the municipality to

investigate or to forestall further incidents."  *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL

4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citation and quotation marks omitted); *see also*

*Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6,

2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on

proof of repeated complaints of civil rights violations that are followed by no meaningful attempt

on the part of the municipality to investigate or to forestall." (citation and quotation marks

omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same), *reconsideration denied*, 2009 WL 2567781 (N.D.N.Y. Aug. 17, 2009).  However, pleadings that have successfully established deliberate indifference by pointing to previous complaints and suits have named and detailed these prior complaints and suits.  *See, e.g., Tieman*, 2015 WL 1379652, at *20 (holding that the plaintiff sufficiently alleged a need for better training or supervision where the plaintiff listed and detailed nine other complaints raising similar allegations against same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged a need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations of excessive force by police officers), *reconsideration denied*, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014).  By contrast, courts have dismissed deliberate indifference claims when a pleading merely asserts without detail that there have been many prior complaints.  *See, e.g.*, *Strong v. City of Syracuse*, No. 16-CV-1054, 2020 WL 137250, at *3 (N.D.N.Y. Jan. 13, 2020) (alleging "frequent" and "widespread" misconduct, without more, is insufficient to establish a deliberate indifference claim under *Monell* (citation and quotation marks omitted)); *Arrindel-Martin v. City of Syracuse*, No. 18-CV-780, 2018 WL 6622193, at *7 (N.D.N.Y. Dec. 18, 2018) (same, based on alleged "numerous" complaints (quotation marks omitted)); *Smith v. County of Nassau*, No. 10-CV-4874, 2015 WL 1507547, at *12 (E.D.N.Y. Jan. 6, 2015) (same, based on alleged "dozens" of complaints (quotation marks omitted)), *adopted in relevant part, rejected in part by* 2015 WL 1507767 (E.D.N.Y. Mar. 31, 2015), *aff'd,* 643 F. App'x 28 (2d Cir. 2016); *see also Walker v. City of New York*, No. 14-CV-808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (dismissing deliberate indifference claim where the "[p]laintiff does not allege any specific facts

10

as to the contents of the complaints, how many were filed, and when they were filed"). This is precisely how to fairly describe Plaintiff's allegation that "dozens" of inmates have complained that the food trays taste of soap, (Compl. 7), as it lacks sufficient detail about these alleged prior complaints to make out a plausible claim of deliberate indifference.

Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim, his claims against the County and Aramark must be dismissed, as must his claims against Mendoza and Spanos in their official capacities.

### 2. Individual Claims

Mendoza and Spano argue that the Complaint should be dismissed against them because they were not personally involved in the alleged constitutional violations. (Defs.' Mem. 10–11.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations, italics, and quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL

365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff does not adequately allege Mendoza's and Spano's direct involvement.  Instead, Plaintiff alleges that Mendoza and Spano have failed to take corrective action despite attending meetings where similar food service complaints were discussed.  (Compl. 8.)  These allegations appear intended to suggest that Mendoza and Spano knew about the undercooked meat, moldy juice, and brown water, and failed to take action.  However, "Plaintiff does not provide facts alleging *what* [Mendoza and Spano] knew about the . . . food problem or *when* they knew about it."  *Quick*, 2019 WL 1083784, at *5 (emphases in original).  Nor does the Complaint contain facts suggesting that Mendoza or Spano participated directly in serving Plaintiff poor food, created a policy or custom of serving poor food, or were grossly negligent in allowing others to prepare poor food.  (*See generally* Compl.). As discussed *supra*, the Complaint also fails to establish that Mendoza or Spano were deliberately indifferent to the poor food quality.  (*Id*.)  The Complaint similarly contains no allegations regarding Mendoza's or Spano's role in McWilliams's or West's refusal to accept Plaintiff's complaints.  (*Id*.)  Accordingly, each of the claims against Defendants in their individual capacities must be dismissed.[3]

---

[3] Defendants also argued that Plaintiff's claims should be dismissed because (1) Plaintiff did not plead a constitutional violation arising out of a condition of confinement, (Defs.' Mem. 11–15), and (2) Spano is immune from suit, (*id.* at 15–16).  Because the Complaint must be dismissed for failure to state a *Monell* claim and failure to allege facts sufficient to show the personal involvement of Mendoza and Spano, the Court need not resolve these additional arguments.  Plaintiff will have the opportunity to respond to these arguments if he decides to file an amended complaint.

III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.[4]  Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion.  Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

---

[4] The Court notes that allegations nearly identical to Plaintiff's very concerning claims regarding poor food sanitation and quality have recently been raised in numerous other actions against Westchester County and Aramark in this District.  *See, e.g.*, *Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841 (S.D.N.Y. Jan. 28, 2020); *Smith v. Westchester County*, No. 19-CV-1283, 2019 WL 5816120 (S.D.N.Y. Nov. 7, 2019); *Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425 (S.D.N.Y. Aug. 22, 2019); *Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859 (S.D.N.Y. Aug. 19, 2019); *Dawson v. Westchester County,* No. 18-CV-7790, 2019 WL 3408899 (S.D.N.Y. July 29, 2019); *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020 (S.D.N.Y. July 25, 2019); *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661 (S.D.N.Y. June 10, 2019); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566 (S.D.N.Y. Mar. 29, 2019); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634 (S.D.N.Y. Mar. 25, 2019); *Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462 (S.D.N.Y. Mar. 21, 2019); *Quick*, 2019 WL 1083784; *White v. Westchester County*, No. 18-CV-990, 2018 WL 6493113 (S.D.N.Y. Dec. 10, 2018); *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175 (S.D.N.Y. Mar. 30, 2018).  The Court expects that counsel for Defendants also takes note and will discuss the serious allegations raised in these cases with their clients.  The day that a motion such as the one filed here will be denied is coming.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 23), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:      September 23, 2020
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE